316

GABRIEL ROSARIO ET AL., Plaintiffs and Appellees, *v.* PUERTO RICO LAND AUTHORITY, Defendant and Appellant.

No. R-68-47.        Decided May 20, 1969.

*José Alberty Orona* for appellant. *Antonio Figueroa Rivera* for appellees.

First Division composed of Mr. Justice Pérez Pimentel, as Chief Judge of Division, Mr. Justice Blanco Lugo, Mr. Justice Rigau, and Mr. Justice Ramírez Bages.

MR. JUSTICE RAMÍREZ BAGES delivered the opinion of the Court.

A group of workers from the proportional-profit farms of the Land Authority filed a complaint against the latter in the Superior Court, San Juan Part, in which they claimed:

1. Unpaid proportional profits          $32,000
2. Unpaid extra hours at the rate of $7,000 for each one of the 32 plaintiffs          $224,000
3. Difference in wages for work performed in burnt sugarcane at the rate of $3,000 for each one of the 32 plaintiffs          $96,000
4. Overtime worked during the dull season (rainy season) during 10 years at the rate of $10,000 for each claimant          $320,000

                 TOTAL    $672,000

They also claimed penalties, costs and attorney's fees.

The entire claim, having been denied and a special master having been appointed by the trial court to receive the evidence of the parties and to make findings of fact and conclusions of law, the parties stipulated, among other things, that the claim "for burnt sugarcane was limited to the difference for sugarcane burnt during extra hours" and that the analyses of the payrolls made by appellant in relation to each appellee be admitted without interpreting this "as an admission against appellees."

After several hearings held before the special master, the latter submitted a report to the trial court where he made the following findings of fact:

(a) Concerning the claim for extra hours:

"6. That during the grinding season and during the so-called dull season the plaintiffs had regularly an eight-hour working day. This eight-hour working day began almost always at 7:00 a.m. and continued until 11:00 a.m. The laborers took lunch from 11:00 a.m. to 12:00 m., time at which they resumed their work and left regularly at 4:00 p.m.

"7. All the claimants denied having been paid any extra hour. According to their testimony they all worked from 6:00 a.m. to 6:00 p.m. from Monday to Saturday, and on many occasions Sunday morning, except for an hour off for lunch from 11:00 a.m. to 12:00 m. The pay tickets admitted in evidence show that extra hours were paid to them, and it was thus admitted by plaintiffs from the witness stand when they were confronted with the same.

"8. From the evidence of the defendant, consisting of the testimonies of witnesses Felipe Padilla Remigio, Víctor Pagán, Jenaro Martínez Díaz, José I. Barbosa, Juan Santana Franco, Máximo García Colón, Antonio Morales Franco, and José Ángel Boria Gómez (timekeepers and farm managers), it is inferred that on occasions there were omissions and discrepancies as to fractions of extra hours worked and which had not been entered. Sometimes the laborer won his claim and on those occasions the difference was paid to the laborer in the following week, showing it in the payroll as *payment for omission* in the preceding week.

". . . . . . . .

"10. It was not usual that the plaintiffs would work extra hours during the so-called dull season, and the few extra hours worked by some of the plaintiffs during this period, as it appears from the excerpts of the payrolls and pay tickets, were satisfied. The planting and farming work in the proportional-profit farms where plaintiffs work is substantially reduced three months after the grinding season is finished. After these three months have elapsed the majority of the few laborers who continued working on the farm rarely work in excess of eight hours a day."

In finding No. 9 numerous extra hours worked by appellees, which were duly paid by appellant, are indicated.

However in paragraph III of his conclusions of law the special master informs that:

"Compensation for extra hours worked during the period of 10 years for which they did not receive compensation.

"In our findings of fact we determined that eleven out of the twenty-seven plaintiffs worked extra hours for which they had not received additional compensation. As to the remaining sixteen all extra hours worked were paid according to the provisions

of the agreement and the law except for the differential for extra hours worked in burnt sugarcane."

The total amounts recognized by the special master, as owed by appellant to each appellee on account of extra hours and differential of work in burnt sugarcane, appear in finding No. 18. They add up to the amount of $11,525.08 plus an equal amount as penalty.

The trial court rendered judgment ordering appellant to pay said sum in the way and manner provided in the special master's report, plus $7,606.55 for attorney's fees and, in addition, it ruled the following:

"By order of December 9, 1964 this court provided that the fees of the Special Master would be paid by the prevailing party. As to this aspect the aforecited order is set aside, because the court understands that it is contrary to the public policy underlying the legislation concerning wages in Puerto Rico, since it would be equivalent to reducing the wages to which laborers are entitled. It is ordered that the fees of the Special Master as well as the other expenses incurred during the hearings will be paid by defendant, Puerto Rico Land Authority.

"Special Master Mr. Martín Almodóvar Acevedo's fees are fixed in the amount of $5,500 and those of the stenographer Olga Vázquez Leal in the amount of $588."

Of the four assignments which the appellant made on appeal, only the first three have been discussed. We conclude that it is correct as to the first two, that is to say that the granting of any amount for alleged extra hours worked and not paid for did not lie, and that the amount of attorney's fees is excessive and should be reduced from the sum of $7,606.55 to $2,000. The third assignment challenges the determination ordering the payment of the special master's fees, for it alleges that the trial court erred in setting aside a former order which enforced the stipulation of the parties, that such fees would be paid by the prevailing party. As to this one, appellant is wrong, despite concluding that it was inappropriate to set aside the said order.

1—We consider first the assignment about extra hours.

■ It is true that it has been the policy of this Court to uphold the weighing of the evidence made by trial judges except in cases of manifest error, clear arbitrariness or prejudice or passion, and that the findings fully supported by the evidence will not be disturbed by this Court. *Community Partnership* v. *Presbyterian Hospital*, 88 P.R.R. 379, 399 (1963); *Álvarez* v. *Álvarez*, 77 P.R.R. 862, 869 (1955). It is not less true that in civil cases the affirmative is a question which should be established and when the evidence is contradictory, the decision should be rendered in accordance with the preponderance of evidence; that the courts are not justified in granting claims for wages which are not duly proved; that "Although it is the duty of the courts to protect the workmen or employees in their reasonable claims for wages where it is shown that the employer has failed to pay them, they are not justified in granting claims that have not been duly proved." And that "a person claiming unpaid wages for extra hours has the burden to prove by a preponderance of the evidence not only that he worked in excess of the regular working day, but also the number of extra hours worked by him." *Marchán* v. *Eguen*, 44 P.R.R. 396 (1933); *Vélez* v. *Royal Bank*, 65 P.R.R. 912 (1946); *Sierra* v. *Eastern Sugar Associates*, 71 P.R.R. 832 (1950).

■ Although the main purpose of the Wage Act is to protect the laborer, the courts are not justified in granting claims for wages which have not been duly proved. *Vélez, supra*. An employee who brings suit for unpaid overtime compensation has the burden of proving that he performed work for which he was not properly compensated. The remedial nature of this statute and the great public policy which it embodies, however, militate against making that burden an impossible hurdle for the employee. In such a situation we held in *Sierra* that an employee has carried out his burden

if he proves that he has in fact performed work for which he was improperly compensated and *if he produces sufficient evidence to show the amount and extent of that work* as a matter of just and reasonable inference. The burden then shifts to the employer to come forward with evidence of the precise amount of work performed or with evidence to controvert the reasonableness of the inference to be drawn from the employee's evidence. *If the employer fails to produce such evidence, the court may then award damages to the employee, even though the result be only approximate. Matías Rodríguez* v. *Social Programs Adm.*, 92 P.R.R. 193, 199 (1965).

■ We said in *Lebrón* v. *P.R. Ry., Lt. and P. Co.*, 78 P.R.R. 650 (1955), that: "normally this Court will accept the findings of fact of a master after they have been affirmed and adopted by the Superior Court." This however, does not mean that we do it when we are convinced that a clear and manifest error has been committed.

Appellees' evidence consisted of plaintiffs' testimony to the effect that they worked every day from 6:00 a.m. to 11:00 a.m. and from 12:00 m. to 6:00 p.m. and that they were never paid one extra hour. The evidence shows that they were paid certain extra hours worked during the dull season and in burnt sugarcane during the grinding season, which was admitted by appellees when they were confronted with the pay tickets. It also appears that on occasions there were omissions and discrepancies on account of some fraction of extra hours worked and which had not been accredited to the workman the special master concluding that the laborer prevailed sometimes and then the difference was paid the following week, which showed that the laborers did not hesitate in claiming the payment for the extra hours which they had worked and which were not included in the wages of the week in which they had worked them, so that it is not credible that the laborers would fail to make claims of this nature with due promptness and that, on the contrary, they

accepted the amounts which the pay tickets signed by them showed in fear of possible reprisals.

Appellant's testimony was to the effect that the plaintiffs worked 6 days a week from 7:00 a.m. to 11:00 a.m. and from 12:00 m. to 4:00 p.m.; that on the occasions when they began at 6:00 a.m. they finished at 3:00 p.m.; that when they worked extra hours they were paid for them. The documentary evidence admitted by the parties consisting of a payroll analysis and pay tickets corroborated said testimony. In his finding No. 9 the special master reports the extra hours worked by and paid to a specific number of appellees. The extra hours worked during the dull season were also paid according to the special master's finding No. 10.

In his finding No. 17 the special master specifies the names of the plaintiffs to whom specific amounts are owed for extra hours worked in burnt sugarcane which were compensated at double the rate agreed upon for works in unburnt sugarcane when they should have been paid at a triple rate, since the wage agreed upon for work in burnt sugarcane during regular hours was time and a half that agreed upon for work in unburnt sugarcane.

In his finding No. 18 the special master finds that eleven of the appellees had not received compensation for a number of extra hours worked "in the transportation of sugarcane from the farms to the central or sugarcane concentration centers." The days, weeks, months, and grinding seasons in which said extra hours were worked are not indicated in this finding and we have not been able to determine from the record the way and manner which the special master used to determine the number of extra hours accredited by him to each appellant in said list. In the list of the plaintiffs who testified, which appears in the special master's finding No. 3, and from their testimony it appears that:

1. Ángel Luis Martínez worked from 1954 to 1963 as operator of agricultural machinery in 7 of appellant's farms.

He testified that he worked as a tractor operator "spreading sugarcane seeds for the central" and in the cultivation of sugarcane; he began at six in the morning until eleven; from eleven to twelve he had lunch and began again at twelve until six or seven in the evening, the six days of the week. During the grinding season he used to work two Sundays a month with the same hours. He was never paid extra hours. Confronted with the pay tickets, he admitted having received the amounts which they indicated.

2. Francisco Marrero López worked from 1954 to 1963 as sugarcane crane loader, ditchdigger, road worker, agricultural machinery operator, and fertilizer and seed spreader on the farms Ingenio, Julia, and Constancia. It was stipulated that he would testify the same as the previous one and the pay tickets signed by him were offered in evidence. It does not appear that he worked in the transportation of sugarcane.

3. Francisco Hernández Oliver worked from 1954 to 1963 in weeding, irrigation, cutting and loading of sugarcane at the farm Campanillas. He testified that he began at six in the morning and left at six or seven in the evening, with an hour off for lunch, every day of the week including Sundays. During the grinding season he began at 7 in the morning. He signed the pay tickets because he would not get paid if he did not sign. He received the amounts which were stated on the envelope.

4. Miguel A. Rosario, worked from 1954 to 1963 in sugarcane planting, cutting and loading, weeding, road work, ditches, oiling of tractors, spreading of sugarcane with agricultural machinery on the farms Pájaros, Mucarabones, Cocos, and Constancia. He testified that he began to work for the Authority since 1959. He began working at six in the morning and left at 6 in the evening with an hour off for lunch. On Sundays he rested. He has not been paid extra

hours. During the dull season he began working at 7:00 in the morning. In 1958 he worked as sugarcane cutter, but before that year he did not work because he was studying. He does not claim for sugarcane cutting because cutters only work eight hours. He only worked extra hours during the grinding season and they were never paid to him. The hours which he had worked were stated on the pay ticket, the envelope had the amount which appeared on the pay ticket and he signed it.

5. Jorge Luis Marrero Reyes worked from 1956 to 1963 as a tire mounter, oiler, hand loader, tractor operator on the farm Julia and in the Service Unit which served said farm. He testified that he started to work at six in the morning until eleven, and from twelve to six in the evening, six days a week during the grinding season. On Sundays he did not work. He was never paid extra hours. During the dull season "he started at six and left at four." He informed Juan Santana of the extra hours but they were never paid to him. The money he received was in conformance with what was stated on the pay ticket and he signed it. He is sure that he was never paid extra hours.

6. William Vázquez Quiñones worked from 1954 to 1963 as ditchdigger, in sugarcane weeding, irrigation and plowing, and as agricultural machinery operator on the farm Constancia. He testified that he was a tractor operator on the farm Ingenio, he started work at six in the morning until six in the evening; "I left at twelve for lunch until one." Six days a week and sometimes on Sundays he washed the tractor from seven to eleven in the morning. He was never paid extra hours. He always worked on the farm Ingenio. He was confronted with the pay tickets signed by him where extra hours were being paid to him and he admitted having received the amount ($92.41) although he said that he had not

been paid for extra hours. He admitted however, that his daily wage was $5.80. He could not explain why although working always the same number of hours sometimes he received more and sometimes less.

7. Natalio Navedo worked from 1955 to 1963 as a fencer, weeder and loader of sugarcane, herbicide spreader, tractor washing and maintenance, farm equipment operator on the farms Arizona, Los Cocos, and at the Service Unit of Toa. He testified that he worked as a machinist hauling sugarcane from the plantation to the central and towards the crane. He always worked during grinding seasons. He began to work at six in the morning until six in the evening with an hour off for lunch. On Sundays he plowed from six to six or washed the tractor. He was never paid extra hours. He also worked during the dull season spreading fertilizer from six to six with an hour off for lunch, and on Sundays with the same hours. He began to work in 1954. He plowed fifteen cuerdas daily. He signed the tickets because if he did not he was not paid. Having been confronted with the tickets he admitted that he received the amounts which were stated on the envelope but not the ones he thought he was going to receive.

8. Víctor Padilla Remigio worked from 1954 to 1963 as agricultural machinery operator, washing tractors, road work on the farm Ingenio. He testified that he worked as a tractor operator on the farm Ingenio from 1954 in burnt sugarcane. He began at six in the morning until six in the evening with one hour off for lunch, from twelve to one. He worked six days a week. Then it was stipulated that he would testify the same as the previous one. On cross-examination, he testified that he was never paid extra hours in 10 years. On Sundays he worked from seven to eleven in the morning during the grinding and dull seasons. He does not know how much is owed to him for extra hours.

9. Hermenegildo Carmona Castro worked from 1954 to 1961 in the sugarcane loading, irrigation, fence repairing, cutting and seed spreading, lubrication of tractors, plowing and agricultural machinery operator on the farm Campanillas. After it having been stipulated that he would testify the same as the previous one, he testified on cross-examination, that he began in 1954 on the farm Campanillas, as a Thompson equipment operator. He began at six in the morning. He does not know how long each trip took him. He was never paid extra hours. After being confronted with the pay tickets he admitted having received what was stated therein.

10. Sotero Ortiz Marrero worked from 1954 to 1963 in irrigation, sugarcane loading, cutting, and equipment operation on the farms Constancia and Bárbara. He testified that he always worked on Constancia as chainman. Afterwards it was stipulated that he would testify the same as the previous one. He was not paid extra hours. On cross-examination he testified that he only worked extra hours during the grinding season. During the dull season he did not work extra hours. He signed the ticket because if he did not sign he would not receive his pay. When he signed, he received the amount stated on the ticket.

11. Antonio Báez Cosme worked from 1955 to 1963 in moving equipment, seeding sugarcane and fertilizer spreading and as a tractor operator on the farm Constancia. He testified that he worked cutting sugarcane and during the rainy season he was a machinist. Already in 1954 he was working for the Authority. On Sundays he did not work because his faith prohibited it. He began to work at six in the morning and left at six in the evening. Since the Authority began to burn sugarcane they worked until six "When the Corporations . . . . It was worse, we worked until after seven." When he received the ticket he read it and understood it and knew what he was getting paid for and for what reason. Con-

fronted with the pay ticket he alleged that the difference was "According to their method they paid 47.67 which they alleged was a bonus, I do not know . . . ." He testified that he received the amounts which were stated on the tickets because "Sometimes they gave some cents as bonus." The amount which appeared on the ticket was the same that was on the envelope.

From the foregoing we infer that:

1. Appellees' testimony that they worked 12 hours daily, six or seven days a week, and many times at night, during 10 consecutive years, is extremely exaggerated and departs from every known or conceivable standard of work in the farming and harvest of sugarcane. More incredible yet is the fact that invariably all appellees, who had such different and varied jobs in different places, worked so uniformly 12 hours daily, six or seven days a week during 10 consecutive years.

2. The alleged fear of not demanding the payment of overtime did not exist since some of the appellees admitted that on occasions on which they were not paid to them, they claimed them and they were paid.

3. The oral and documentary evidence of the employer, against the aforementioned uniform testimony of appellees, showed the nature and place of work of each of the appellees and the hours worked in each of the jobs as well as the extra hours which they worked and for which they were paid.

4. We have not found anything in the record to justify the determination of the nonpayment of a precise number of extra hours to each one of the eleven appellees stated in the master's finding No. 18. Neither are the days and places, in which said hours were worked, indicated. Besides, the record shows that, of the appellees, four only proved having worked in the transportation of sugarcane in addition to having performed other jobs. This finding is in clear conflict with the others which appear related in the master's report. The

evidence previously related does not support or justify the referred determination.

In view of the foregoing, we conclude that the trial court erred in concluding that each one of the aforesaid eleven appellees worked a certain number of extra hours for which they were not paid. For that reason, the judgment should be reduced as to the amounts and the appellees related in master's finding No. 17, the total of which amounts to $6,711.73 plus the penalty of law.

The amount of $7,606.55 for attorney's fees having been considered excessive the same should be reduced to the amount of $2,000.

■ ■ The third error challenges the part of the judgment which sets aside the order of the trial court which provided that the special master's fees were to be paid by the prevailing party as stipulated by the parties to the suit, said court ordering appellant to pay them. There is no provision of law stating that such fees be paid by the employer as there is in the case of attorney's fees. Neither is there any provision which forbids the judge, in a proper case to order its payment to any of the parties, according to the provisions of Rule 41.1 of the Rules of Civil Procedure. Therefore we conclude that under the circumstances of this case, the trial court did not err in ordering appellant to pay the special master's fees.